## Rosakis v. Fabiszewski

*Robert L. White*, for plaintiff.
*Edwin Angstadt*, for defendant.
*Frederick T. Lachat*, for defendant Agzigian.
*Ellen K. Glessner*, for defendant Ballow.

BIESTER, JR., *J.*, May 21, 1986—

## FINDINGS OF FACT

1. Plaintiff, Thomas Rosakis, is an 85-year-old individual who was born in Greece and had no formal schooling; he was never married and has no living relatives. He resides by himself at 1618 Farragut Avenue in Bristol, Pa. Plaintiff, Thomas Rosakis, has been a resident of the United States for 72 years. He has been in the retail sales business since 1921. Plaintiff is able to read and write the English language.

2. Defendants, Joseph Fabiszewski and Ruth Fabiszewski, his wife, are individuals residing at 541 Locust Street, Bristol, Pa.

3. Defendant, Harry Agzigian, is an attorney with offices at 2750 Trenton Road, Levittown, Bucks County, Pa.

4. By deed dated November 2, 1944, and recorded in Deed Book 739, page 594, in the County of Bucks, plaintiff became owner of real estate located at 1618 Farragut Avenue, Bristol, Pa.

5. As of November 1982, that parcel of real estate consisted of the following:

"(1) A parcel of 40.88 feet in width and 150 feet in depth containing a commercial retail variety store

known as "Tommy's Market," (being lot 100 and one-half of lot 99 of an old subdivision plan recorded in Bucks County Recorder of Deeds Office in Plan Book 1, page 116).

(2) A parcel of vacant land to the rear of the above parcel, being approximately 265.24 feet by 125 feet, (being lots 279 through 289 in the aforesaid Plan Book 1, page 116).

(3) A parcel of land known as the alley way, being 20 feet by 150 feet, (being four-fifths of Lot 95 as recorded in Plan Book 1, page 116)."

6. The parties entered into a written agreement of sale November 23, 1982, in the following operative language:

"A certain parcel of real estate, together with the buildings erected thereon, known as 1618 Farragut Avenue, Bristol Borough, Bucks County, Pa., which premises are approximately 40.88 feet in width and 150 feet in depth."

In that agreement, plaintiff also agreed to sell the food market known as "Tommy's Market" including fixtures, equipment and furniture, the total consideration being $100,000 and allocated as follows:

| | |
|---|---|
| Good Will | $ 1,000 |
| Furniture, fixtures and equipment | 39,000 |
| Real estate with improvements | 60,000 |

7. The aforesaid agreement of sale provided that plaintiff would retain:

"an unconditional and irrevocable life tenancy of that portion of the subject real estate with improvements located thereon, which is an apartment, approximately 12.5 feet by 115 feet in depth and that portion of the basement which is under said apartment."

8. Settlement was held on January 6, 1983, at the offices of Barry Ballow, Esq., acting as agent for Industrial Valley Title Insurance Company and also

as attorney for defendants and purchasers Joseph Fabiszewski and Ruth Fabiszewski. At settlement plaintiff was presented with a deed prepared by defendant Barry Ballow which conveyed the premises specifically referred to in the aforesaid agreement of sale. That deed also provided for the creation of a life estate approximately 12½ feet by 115 feet in accordance with the relevant provisions of the agreement of sale. That deed also provided for and did convey both additional parcels of land which were described in paragraph 5 of these findings and which were not referred to in the said agreement of sale.

9. Plaintiff intended to sell only that portion of his property containing the retail store approximately 28 by 150 feet. The remaining portion of the retail store 12½ feet by 115 feet was appropriately designated as the life estate in the deed.

10. Several months following settlement, when plaintiff did not receive any tax bills, he went to the tax collector to find out why. The tax collector explained to him that he would not be receiving any tax bills because he had sold all of his real estate.

11. Shortly thereafter, plaintiff brought this action for rescission and restitution.

12. Mr. Rosakis utilized the services of an accountant named Samuel Pearl with respect to achieving an agreement between himself and the Fabiszewskis concerning the sale. In the course of discussions, the Fabiszewskis brought to Mr. Pearl's attention that Mr. Rosakis was to have a life estate in a portion of the premises approximately 12½ by 115 feet. That would be for the purpose of his dwelling.

13. When Mr. Rosakis asked for a recommendation of an attorney for himself Mr. Pearl recommended Mr. Agzigian, whose services Mr. Rosakis agreed to utilize. Pearl then called Mr. Agzigian and

told him he had a new client for him who was selling his business. Mr. Agzigian had been advised by Mr. Pearl that there had been a former agreement of sale which had not gone through which he would send to him and that there was to be a life estate involved but he could not tell him anything about the life estate.

14. By some means the former agreement, the so-called Rocco agreement, was provided to Mr. Agzigian to use as a model for the agreement between Mr. Rosakis and the Fabiszewskis.

15. Mr. Agzigian prepared the agreement of sale which is the agreement of sale in this case.

16. Mr. Agzigian never discussed the agreement of sale with plaintiff prior to the preparation or signing of the agreement of sale. He did not attend the session when the agreement of sale was signed by both Mr. Rosakis and the Fabiszewskis. Mr. Pearl presided that session.

17. Mr. Agzigian's first meeting with plaintiff was on December 29, 1982, one week prior to the settlement, and the primary purpose of that session was to discuss preparation of Mr. Rosakis' will and the defense of a fall-down case arising out of someone having fallen down at or near the subject premises.

18. Mr. Agzigian prepared the agreement of sale after reviewing a prior agreement of sale between plaintiff and one James Rocco. That earlier agreement provided for the sale of a premises 40.88 feet by 150 feet. Mr. Rocco testified that he agreed to purchase the store building, which was 40.88 feet by 150 feet for the purchase price of $135,000, which agreement did not include the additional parcel of 265 feet by 125 feet.

19. It was after Mr. Rocco decided not to purchase the property that plaintiff decided to sell to defendants Fabiszewski.

20. Fabiszewski was mainly concerned about the business and did not know the extent of the land to the rear of the business building.

21. When asked whether it was his intent in this transaction to buy the piece in back which measures 113 feet by 265 feet, Mr. Fabiszewski replied as follows:

"Your Honor, my intent was to buy a piece of real estate with the business. I have no legal background to know what I'm supposed to measure. Mr. Rosakis has had all kinds of real estate transactions — excuse me for taking so long, Your Honor. I relied on his judgments to decide what he was selling. I intended to buy the entire package that was, and I still feel is, known as 1618. I have since learned that after buying it at settlement that that piece of property came with it."

22. Settlement on the subject premises took between three and four hours and was a complicated and confusing settlement requiring contact with a judgment holder in Florida, the preparation of some indemnity agreement and various other matters.

23. All of the premises located on the street on which the subject premises are located have a depth of 150 feet.

## CONCLUSIONS OF LAW

1. The deed executed by plaintiff at settlement on January 6, 1983, was executed by plaintiff under a mutual mistake as to the real property conveyed thereby.

2. The mutual mistake consisted of the conveyance of the parcel 265.25 by 125 feet (lots 279

through 289) and four-fifths of lot 95, instead of only the store premises consisting of 40 feet by 150 feet.

3. There was no mutual mistake regarding the plaintiff's retaining a life estate in that portion of the business property being approximately 12½ feet by 115 feet. The agreement spells out the life estate and the evidence seems clear to the effect that everyone understood that what was being retained was a life estate and not a fee simple title in that portion of the premises.

4. Plaintiff received no consideration for his conveyance by the subject deed to defendants of the parcels referred to in paragraph 2 above.

5. Equity has the power to reform an instrument because of mutual mistake.

6. Plaintiff is entitled to have the deed reformed to express the intention of the parties to convey a parcel 28 feet x 150 feet including the improvements thereon erected (the main store), plaintiff retaining that portion of the real estate 12½ feet x 115 feet for the duration of his natural life.

## DISCUSSION

It is well established that, to justify reformation or invalidation of a contract by reason of mistake, the mistake must be shown to have been mutual. Thrasher v. Rothrock, 377 Pa. 562, 105 A.2d 600 (1954). Where both parties to a contract are mistaken as to existing facts at the time of execution, the party adversely effected by such mistake may be given relief. Ehrenzeller v. Chubb, 171 Pa. Super. 460, 90 A.2d 286 (1952).

Not every mutual mistake will merit equitable relief; rather, to warrant relief, the mistake must relate to the basis of the bargain; it must materially affect the parties' performances; and it must not be

one for which the injured party bears the risk. Loyal Christian Benefit Association v. Bender, 342 Pa. Super. 614, 493 A.2d 760 (1985). The court in Spatz v. Nascone, 283 Pa. Super. 517, 424 A.2d 929 (1981) relied upon section 294 of the Restatement (Second) of Contracts, the comment to which provides the following illustration of mutual mistake:

"Illustration 2: A contracts to sell and B to buy a tract of land, on the basis of a report of a surveyor whom A had employed to determine the acreage. The price is, however, a lump sum not calculated from the acreage. Because of an error in computation by the surveyor, the tract contains 10 per cent more acreage than he reports. The contract is voidable by A." Restatement (Second) of Contracts, §294 (Tent. Dr. No. 10 1975.)

We find the parties in the instant action operated under a mutual mistake as to the subject matter of their contract. Their mistake as to the identity of the property being sold related to the essence of the contract and materially altered the parties' performances. Further, we find no basis, contractual or otherwise, for holding that plaintiff bore the risk.

Reformation of the contract is the appropriate form of relief in this case. See, Perry Ross Coal Co. Leasehold Condemnation, 48 D. & C. 2d 771 (1970) (where the mistake lies in the fact that the instrument does not express the true agreement of the parties, the remedy is reformation). The parties' true agreement limited the sale to the property containing the retail store; therefore, it is proper to reform the agreement to exclude the additional parcels which were unintentionally conveyed.

Finally, plaintiff has asserted a cause of action against his former attorney, Harry Agzigian, for the latter's alleged mishandling of the sale. Plaintiff has, however, failed to provide evidence of the standard

of care owed, and allegedly breached, by defendant Agzigian. Evidence of professional malpractice generally is required to be in the form of expert testimony. Plaintiff offered no expert testimony whatsoever on this matter. Likewise, plaintiff has neglected to produce any evidence of his damages arising from defendant Agzigian's conduct, including any amounts expended in attorney fees. We conclude from plaintiff's delinquencies a lack of serious intent to pursue this claim.

Wherefore, we enter the following

### ORDER

And now, this May 21, 1986, it is hereby ordered, directed and decreed that the deed is rescinded to the extent that it purports to convey the rear, vacant parcel and the alley way and that plaintiff shall execute a new deed consistent with this order. All other claims asserted by plaintiff are denied and dismissed.